IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARREN GRAY, # M-14568,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**DR. PHIL MARTIN,** )<br>**ELAINE HARDY,** )<br>**DR. JOHN COE,** )<br>**DR. PAUL TALBOT,** )<br>**DR. ALBERTO BUTALID,** )<br>**G. WALKER,** )<br>**K. HENTON,** )<br>**JEFFERY STRUBHART,** )<br>**and DANIEL P. DOWNEN,** )<br>)<br>**Defendants.** ) | Case No. 14-cv-1418-SMY |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Vienna Correctional Center ("Vienna"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose during his confinement at Lawrence Correctional Center ("Lawrence"). Plaintiff is serving an eight-year sentence for burglary. His complaint focuses on the inadequacy of medical treatment rendered by several Lawrence physicians and medical providers, as well as other prison officials, who he claims were deliberately indifferent to his serious medical conditions.

The following summary of facts is gleaned from Plaintiff's complaint, as well as from his 109 pages of exhibits, to which he refers frequently in his pleading.

Plaintiff's first ailment developed while he was working at his prison job in the laundry room, in September and October 2012 (Doc. 1, pp. 5-6). After drying and folding clothes and

mops, Plaintiff cleaned out the dryers' lint traps each day. He developed a painful cough in October 2012, which he treated by taking cough drops, cold tablets, and drinking tea.

When the cough got worse, Plaintiff told his supervisor, Defendant Walker, that he had put in many sick call requests but had not been called for an appointment (Exhibit 2, Doc. 1-1, pp. 2-3). Defendant Walker submitted a sick call request for Plaintiff, and he saw the nurse and received medication (CTM for the cough and acetaminophen for pain) on January 11, 2013. The next day, Defendant Dr. Talbot diagnosed Plaintiff with an allergic reaction to lint and dirt which had built up in his lungs. He prescribed Claritin and Zantac, and issued Plaintiff a permit to wear a face mask in the laundry room for three days (Exhibit 4, Doc. 1-1, p. 10). Plaintiff never received the mask. He claims that Defendant Walker should have provided him with a face mask (Doc. 1, p. 11). He wrote a grievance on January 24, 2013, complaining about the slow responses to his requests for treatment, and that he was not getting better despite taking six different prescribed medications (Exhibit 7, Doc. 1-1, pp. 19-20). Plaintiff was allowed to quit his laundry job by February 3, 2013 (Doc. 1-1, p. 21).

Plaintiff saw a nurse several times for his persistent cough, on February 20, April 16, June 17, August 2, September 11, November 2,[1] and December 24, 2013. He was given CTM and acetaminophen at some of these visits (Doc. 1, pp. 7-10). He does not identify the nurse(s) by name.

Plaintiff saw a new doctor on March 2, 2013, but he does not identify this individual (Doc. 1-1, p. 29; Exhibit 29, Doc. 1-2, p. 7). His records show that he was prescribed Protonix for GERD (gastro-esophageal reflux disease) at that time (Doc. 1-2, p. 7). Blood and urine tests were performed on March 5 and 22, 2013, and Plaintiff had x-rays on March 6. On March 20,

---

[1] At the June 17, August 2, and November 2 health care visits, Plaintiff was seen for both the cough and for abdominal complaints.

2013, he was given simvastatin after the doctor diagnosed him with high cholesterol (Doc. 1-1, p. 38).

He was informed on June 17, 2013, that the March 22 test was positive for H. Pylori. Plaintiff underwent treatment for that bacterial infection beginning late June 2013. He asserts that the medications he took for the persistent cough caused him to catch the H. Pylori infection.

On August 2, 2013, Plaintiff developed sharp abdominal pain and was seen at health care. On September 16, 2013, he saw Defendant Dr. Coe for indigestion and Hyperlipidemia (excess fat or lipids in the blood, according to Plaintiff) (Doc. 1, p. 9; Doc. 1-2, pp. 4, 7). He was diagnosed on that date with gastritis; the Protonix was discontinued and he was prescribed Zantac (Doc. 1-2, p. 7). On September 26, 2013, he had a negative stool test for H. pylori (Doc. 1, p. 9, Doc. 1-2, p. 7). His records show that at a follow-up visit on October 4, 2013, Zantac was discontinued and he was prescribed Famotidine (Doc. 1-2, p. 7). On November 2, he returned to health care with abdominal pain. He saw a doctor again (it is not clear which one) on November 8, 2013, who diagnosed him with GERD with Reflux Bronchitis. He was then put back on Protonix, as well as Reglan (Doc. 1, p. 10; Doc. 1-2, pp. 4, 7).

Plaintiff apparently continued to receive prescribed medications for gastritis and/or GERD. His records reflect that he was "seen on Chronic Illness Clinic" on March 14, 2014, diagnosed with gastritis and constipation, and prescribed Carafate, Pepcid, Bisacodyl, and Milk of Magnesia (Doc. 1-2, p. 7). In July 2014, he complained that his medications were not timely refilled, and were delayed for two months (Doc. 1, p. 10). Plaintiff saw Defendant Dr. Coe on September 18, 2014, because he was still having the same abdominal symptoms after more than a year. This visit is recorded as another "Chronic Illness Clinic" appointment, at which he was continued on the same medications (Doc. 1-2, p. 7). Defendant Coe ordered lab tests to see

whether the H. pylori infection had returned.

On October 8, 2014, Plaintiff declared in a grievance that he would start refusing all medications until he obtained a special diet and proper treatment, because he had been given expired and ineffective medicine (Doc. 1, p. 11; Exhibit 39, Doc. 1-2, p. 28). His complaint states that Defendants Hardy, Butalid, Talbot, and Coe had given him 17 different medications over a 21-month period, with no improvement. In June 2013, Defendant Coe and Defendant Hardy prescribed duplicate doses of aspirin; Plaintiff suggests that this has placed him at risk for developing an ulcer.

He alleges that Defendant Martin, as the Health Care Unit Administrator, failed to ensure that Plaintiff received proper medical treatment (Doc. 1, p. 12). Defendants Strubhart, Henton, and Downen (grievance officers), prevented Plaintiff from receiving proper medical care when they denied his grievances over his treatment. *Id*.

As of the date he submitted his complaint (December 10, 2014), Plaintiff still suffered from the same cough he had developed in October 2012, as well as from the stomach/abdominal pain that began in January 2013. He notes that he is not currently taking any medications or receiving any treatment for these complaints (Doc. 1, p. 13). He seeks injunctive relief against Defendants Martin and Coe, ordering them to provide "effectively working treatments" for his ailments (Doc. 1, p. 14). He also seeks damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the pro

se action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Eighth Amendment deliberate indifference to medical needs claim against medical-provider Defendants Martin, Hardy, Coe, Talbot, and Butalid, for failing to provide effective treatment for Plaintiff's chronic cough/respiratory problems and abdominal pain between October 2012 and December 2014;
>
> **Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Defendant Walker, for failing to provide Plaintiff with protective equipment including a face mask when he worked in the laundry;
>
> **Count 3:** Claim against Defendants Strubhart, Henton, and Downen, for preventing Plaintiff from receiving proper medical treatment when they denied his grievances.

After carefully reviewing Plaintiff's allegations, and accepting them as true, the Court concludes that the complaint fails to state a constitutional claim upon which relief may be granted. The complaint shall be dismissed without prejudice, and Plaintiff shall have the opportunity to re-plead his claims in Counts 1 and 2. Count 3 shall be dismissed with prejudice, as shall Defendants Strubhart, Henton, and Downen.

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574,

581 (7th Cir. 2009). At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**<u>Count 1 – Deliberate Indifference to Serious Medical Needs/Medical Professionals</u>**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The mere fact that a prescribed treatment has proved ineffective does not state a claim. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth*, 532 F.3d at 679.

Plaintiff's allergic reaction to the laundry lint, chronic and persistent cough, and long-term abdominal pain all qualify as serious medical conditions. The key issue as to each of the Defendants is whether their actions or inaction rose to the level of deliberate indifference. Plaintiff's complaint and accompanying exhibits demonstrate that, although his initial sick call

requests did not get a response, since January 2013 he has had multiple health care visits. The medical providers have ordered diagnostic tests, prescribed a number of medications designed to treat Plaintiff's conditions, and routinely followed up on his care. This record indicates that Plaintiff's doctors took reasonable measures to treat his cough and digestive ailments. His H. pylori infection was diagnosed and cured. Taken together, the facts regarding Plaintiff's course of treatment do not indicate deliberate indifference to his medical needs.

However, it is difficult to thoroughly evaluate his claims, because Plaintiff does not always identify which of the Defendants he consulted, or received treatment from, on the various occasions he describes. A plaintiff is required to associate specific defendants with specific claims, so that defendants are sufficiently put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Defendant Talbot was the first doctor to treat Plaintiff in January 2013, but is not mentioned again in the statement of claim. Defendant Coe treated Plaintiff for gastritis in September 2013 and September 2014. Plaintiff never connects Defendant Butalid with any of his health care visits. The only allegation against Defendant Hardy is that she gave Plaintiff a duplicate prescription for aspirin in June 2013. Defendant Martin does not appear to have been directly involved in any treatment decisions. Because the complaint includes a number of allegations that are not tied to any specific Defendant, it is not clear, for example, whether a single doctor tried various medications at different times, or whether there was a difference of opinion between doctors as to the correct diagnosis or treatment for Plaintiff's symptoms.

As currently pled, the complaint (including the incorporated exhibits) does not state a cognizable deliberate indifference claim against any of the medical provider Defendants (Martin,

Hardy, Coe, Talbot, and Butalid) in Count 1. If he wishes to further pursue his claims against any of these individuals, Plaintiff must submit an amended complaint, as directed below. **Count 1** shall be dismissed without prejudice.

Not long after this action was filed, Plaintiff was transferred from Lawrence to Vienna Correctional Center (Doc. 7). Because of that transfer, he is presumably no longer under the care of any of the Lawrence medical providers. It therefore appears that Plaintiff's request for injunctive relief against these Defendants has become moot. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Lawrence under the care of the Defendants named herein, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)). Plaintiff should keep these considerations in mind when preparing his amended complaint.

**<u>Count 2 – Deliberate Indifference to Serious Medical Needs/Defendant Walker</u>**

Plaintiff faults Defendant Walker, his supervisor on the laundry job, for not giving him protective equipment to prevent injury, specifically a face mask (Doc. 1, p. 11). It is not clear whether Plaintiff is seeking to hold Defendant Walker liable generally for allowing him to work under conditions that caused him to develop the cough, respiratory symptoms, and allergic reaction in October 2012 and thereafter, or whether he is blaming Defendant Walker for failing to give him a face mask after Defendant Talbot issued the three-day permit in January 2013 (see Doc. 1, p. 6). Consequently, the Court is unable to evaluate whether Plaintiff should be allowed

to proceed with his deliberate indifference claim against Defendant Walker. Count 2 shall also be dismissed without prejudice for this reason. Plaintiff must re-plead this claim in an amended complaint if he wishes to pursue it further.

**Count 3 – Denial of Grievances**

Plaintiff filed a number of grievances over the allegedly ineffective medical treatment. Defendants Henton, Strubhart, and Downen were responsible for responding to those grievances, and they denied them. Plaintiff asserts that by denying his grievances, these Defendants prevented him from receiving proper medical care. However, it is well established that the rejection or improper handling of inmate grievances will not give rise to a constitutional claim.

The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Clearly, Defendants Strubhart, Henton, and Downen were not themselves medical providers. Their only role was to respond to Plaintiff's grievances – grievances that he filed to complain about the misconduct of the doctors and nurses. The grievance officers were not personally involved in or responsible for treating Plaintiff's medical conditions, thus no liability attaches to them. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

Accordingly, **Count 3** shall be dismissed with prejudice, and Defendants Henton, Strubhart, and Downen shall be dismissed from the action. Plaintiff must omit this claim from any amended complaint he may file.

For the above reasons, Plaintiff's complaint (Doc. 1) shall be dismissed without prejudice

for failure to state a claim upon which relief may be granted. However, Plaintiff shall be allowed an opportunity to submit an amended complaint within 35 days of this order, to correct the deficiencies in his pleading. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). The amended complaint shall be subject to review pursuant to § 1915A.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be held in abeyance pending the receipt of an amended complaint.

**Disposition**

**COUNTS 1 and 2** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 3** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **HENTON, STRUBHART,** and **DOWNEN** are **DISMISSED** from this action with prejudice.

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 35 days of the entry of this order (on or before April 23, 2015). It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 14-cv-1418-SMY. The amended complaint shall present each claim in a separate count as designated by the Court above – however, the dismissed Count 3 shall not be

included. In each count, Plaintiff shall specify, *by name*,[2] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions (for example, which Defendant reached a diagnosis or prescribed a medication).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

---

[2] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: March 19, 2015**

                                                   s/ STACI M. YANDLE
                                                  United States District Judge