IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARREN GRAY, # M-14568,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-cv-1418-SMY |
| ) | |
| **DR. PHIL MARTIN,** ) | |
| **ELAINE HARDY,** ) | |
| **DR. JOHN COE,** ) | |
| **DR. PAUL TALBOT,** ) | |
| **DR. ALBERTO BUTALID,** ) | |
| **G. WALKER,** ) | |
| **and NURSE BAKER,** ) | |
| ) | |
| **Defendants.** ) | |

# **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

This matter is before the Court for a preliminary review of Plaintiff's First Amended Complaint (Doc. 12) pursuant to 28 U.S.C. § 1915A. The amended pleading was filed on April 20, 2015, after Plaintiff's original complaint was dismissed for failure to state a claim upon which relief may be granted (Doc. 8). In accordance with the Court's directions, Plaintiff has confined his claims to the following two counts:

> **Count 1:** Eighth Amendment deliberate indifference to medical needs claim against medical-provider Defendants Martin, Hardy, Coe, Talbot, Butalid, and Baker,[1] for failing to provide effective treatment for Plaintiff's chronic cough/respiratory problems and abdominal pain between October 2012 and December 2014;
>
> **Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Defendant Walker, for failing to provide Plaintiff with protective equipment including a face mask when he worked in the laundry.

---

[1] Nurse Baker was not named as a Defendant in the original complaint; however, Plaintiff included her in the First Amended Complaint.

Plaintiff's claims arose while he was a prisoner at Lawrence Correctional Center ("Lawrence"). Since the filing of this action, Plaintiff was transferred to Vienna Correctional Center ("Vienna"), where he remains.

In the original complaint, Plaintiff stated that he had developed a painful cough in October 2012, attributed to an allergic reaction to the lint and dust he inhaled while working in the prison laundry. Defendant Walker was Plaintiff's supervisor there, and was instrumental in helping Plaintiff get a medical appointment for help with his cough. In the First Amended Complaint, Plaintiff omits that narrative.

Under Count 1 of the amended pleading, Plaintiff claims that Defendant Dr. Talbot prescribed cold and allergy medications for him, but never gave him any medicine or treatment to remove the lint and dirt from Plaintiff's lungs (Doc. 12, p. 7). When the original medication did not work, Defendant Talbot "only prescribed different medications" and did not run tests to find out the "real reason" for Plaintiff's cough. *Id*.

Defendant Dr. Butalid "went off the assumptions" noted by Defendant Talbot in Plaintiff's medical file regarding Plaintiff's continuous cough. He never ran any tests, but only prescribed more medications. Plaintiff was still being treated for the cough in 2014, when a Jane Doe Nurse and Defendant Nurse Baker prescribed CTM and Acetaminophen (Doc. 12, p. 9).

On March 22, 2013, Defendant Dr. Coe diagnosed Plaintiff with an H. Pylori bacterial infection. Three months later, Defendant Coe ordered medication to treat the condition. However, he falsely stated that Plaintiff was treated in March 2013. Defendant Martin also made a false statement that Plaintiff was not diagnosed with the H. Pylori infection until June 25, 2013. These false/misleading statements violated an "Institutional Directive" governing prison employees (Exhibits 2, 3; Doc. 12-1, pp. 3-6). Plaintiff underwent further tests for H. Pylori in

September 2013 and September 2014. His attached records indicate that the test in September 2013 was negative (Doc. 12-1, pp. 10, 11). Defendant Coe's notes from October 8, 2014, state that Plaintiff's "problem is long term" and his H. Pylori antibodies had "dropped to near borderline" (Doc. 12, p. 9; Doc. 12-1, p. 19). Plaintiff complains that Defendant Coe did not provide him with any further medication or treatment at that time (Doc. 12, p. 10). Defendant Coe ordered another H. Pylori test in February 2015.

Plaintiff was seen a number of times at Lawrence for complaints of abdominal pain. Between March and November 2013, he was diagnosed with Gastro-Esophageal Reflux Disease (GERD), Gastritis, and then GERD with Reflux Bronchitis – which caused his continuing cough (Doc. 12-1, p. 10). Plaintiff states, however, that Defendant Martin gave false information regarding the November 2013 diagnosis of Reflux Bronchitis (Doc. 12, p. 9). In 2014, Defendant Coe treated Plaintiff for the abdominal pain, prescribing several medications and ordering further tests (Doc. 12, p. 9; Doc. 12-1, pp. 10, 14, 17). Plaintiff complains that Defendant Coe kept him on the same medications even though he reported they did not work. He saw Defendant Coe again in February and March 2015 for follow-up and tests on his acid reflux, indigestion, and gastritis, as well as for the cough and H. Pylori (Doc. 12, p. 10). Plaintiff never got his x-ray results, and complains that Defendant Coe "hides the status of any important information about Plaintiff's medical conditions." *Id.* Soon after this, around March 11, 2015, Plaintiff was transferred to Vienna (Doc. 12, p. 11).

Plaintiff inserts a section describing a visit he made to a doctor at Vienna, who refused to give him medication for his abdominal pain, informing him that "N.S.A.I.D.S." causes ulcers and bleeding of the brain, and narcotic painkillers are addictive (Doc. 12, p. 7). He then notes that Defendants Coe and Hardy gave him aspirin while he was at Lawrence, but never ran any tests to

see if he had ulcers (Doc. 12, pp. 7, 9).

In October 2014, Defendant Baker gave Plaintiff expired medications (Doc. 12, p. 10). He received a disciplinary ticket for having these items, but it was later expunged.

In December 2014, Plaintiff was seen by a nurse for an irregular heartbeat. Defendant Coe examined him in January 2015 for this problem, and noted that it happened only one time and had not recurred (Doc. 12, p. 10; Doc. 12-1, p. 34). On one occasion in January 2015, Plaintiff coughed up blood and was seen by a nurse (Doc. 12, p. 10; Doc. 12-1, p. 30).

Plaintiff cites several "Institutional Directives" (Exhibits 2, 3; Doc. 12-1, pp. 3-6), and concludes that Defendants Hardy, Coe, Talbot, and Butalid were "suppose[d] to know exactly how to treat and medicate Plaintiff's medical conditions to prevent further injury" (Doc. 12, p. 8). He then observes, "It shouldn't be possible for anyone to sustain more injuries/diagnosis for being treated for (at the time) a continuous cough." *Id*. Finally, he argues that these Defendants, as well as Defendant Baker, did not take reasonable measures to address his condition, "if Plaintiff received more diagnosis/long term injuries and pain after being treated" (Doc. 12, p. 11).

Finally, Plaintiff complains that his "legal status" was improperly placed in his medical records by Mrs. Woods,[2] violating the confidentiality policy in the "Institutional Directives" (Doc. 12, p. 8).

Turning to Count 2 against Defendant Walker, Plaintiff states that he should have known that Plaintiff' job duties in the laundry required a face mask (Doc. 12, p. 12). Defendant Walker had a face mask available but failed to provide it to Plaintiff. He continued to have Plaintiff do the same job without a face mask, after he knew that this caused Plaintiff's continuous cough.

---

[2] Plaintiff does not list Mrs. Woods as a Defendant, and she is not mentioned elsewhere in the amended complaint. Because he listed one new Defendant (Nurse Baker) but omitted Mrs. Woods, the Court concludes that Plaintiff did not intend to bring a claim against Mrs. Woods.

Plaintiff seeks compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a threshold review of the amended complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After carefully reviewing Plaintiff's allegations, and accepting them as true, the Court concludes that the First Amended Complaint fails to state a constitutional claim upon which relief may be granted. This action shall therefore be dismissed.

**Dismissal of Count 1 – Deliberate Indifference – Doctors and Nurses**

As the Court discussed in reviewing Plaintiff's original complaint, his conditions (persistent cough, abdominal pain and gastrointestinal problems, and H. Pylori bacterial

infection) arguably are all objectively serious medical problems. The original complaint reflected that Plaintiff was seen for these problems on many occasions, had tests and was prescribed medications. However, it did not make clear which Defendants were responsible for which actions or alleged omissions relating to Plaintiff's treatment.

The First Amended Complaint is much more specific as to the conduct of each of the medical Defendants. However, it still does not indicate that any of them was deliberately indifferent to his conditions. Plaintiff's central argument is that because the treatment he received for his cough did not cure his symptoms, and because he developed additional health problems (or was diagnosed with them) during the time he was under the care of the Lawrence medical Defendants, they must have been deliberately indifferent to his serious medical needs. This, however, is not the law.

The Eighth Amendment requires doctors and nurses to take "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). There is no constitutional violation merely because a prescribed treatment proves to be ineffective. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Medical negligence or even malpractice does not violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Duckworth*, 532 F.3d at 679; *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). At the other extreme, a deliberate indifference claim may advance if the facts indicate that the prison medical provider's course of treatment "was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate a medical condition," *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007) (internal quotations omitted), or that the treatment "was not based on a legitimate medical judgment." *See Perez v. Fenoglio*, 792 F.3d 768, 777-79 (7th Cir. 2015).

Plaintiff's allegations do not suggest deliberate indifference toward his conditions on the part of any of the medical-provider Defendants. Defendants Talbot and Butalid prescribed medications to treat Plaintiff's cough, and by Plaintiff's own statements, tried different medicines in an effort to find an effective treatment. It is not apparent from the facts Plaintiff describes that tests were necessary during their course of treatment. Plaintiff alleges that Defendant Talbot had a face mask that he could have given to Plaintiff before sending him back to work in the laundry, but he did not do so (Doc. 12, p. 7).[3] However, this does not establish deliberate indifference, as it is not clear that Defendant Talbot was responsible for providing Plaintiff with a mask once he issued the permit. Instead, the complaint suggests that Defendants Talbot and Butalid rendered reasonable treatment for Plaintiff's symptoms. Likewise, Defendant Baker prescribed medications to treat his cough when Plaintiff saw her for that problem.

Defendant Coe treated Plaintiff for several ailments – he diagnosed, treated, and ordered regular follow-up tests for the H. Pylori infection for approximately a two-year period. The alleged "false statements" by Defendant Coe and Defendant Martin[4] regarding the timing of the H. Pylori diagnosis and treatment are inconsequential with reference to this civil rights claim – Plaintiff received reasonable treatment which appeared to effectively treat the infection, and follow-up tests were done to monitor this problem. There is no indication that Plaintiff was harmed by any delay in receiving medication for the H. Pylori infection. Further, Defendant Coe saw Plaintiff several times for his abdominal pain. Plaintiff received various medications for

---

[3] In the original complaint, Plaintiff stated that Defendant Talbot gave him a three-day permit to wear a face mask, but a mask was never given to him. He omits this narrative from the amended complaint.

[4] This is one of Plaintiff's references to alleged violations of the "Institutional Directives" which prison officials are required to follow. However, even if a Defendant's action did violate these directives, it will not give rise to a civil rights claim, and has no bearing on whether the Defendant violated the Constitution. A federal court does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

GERD, gastritis, and reflux bronchitis, and the medications were changed several times.[5] Again, Defendant Coe periodically scheduled Plaintiff for follow-up visits, and ordered tests relating to his abdominal symptoms shortly before Plaintiff was transferred away from Lawrence. This pattern does not suggest deliberate indifference on the part of Defendant Coe to Plaintiff's bacterial infection or abdominal distress. While the medications did not succeed in eliminating all of Plaintiff's symptoms, nothing in the record indicates that Defendant Coe's course of treatment for these issues was inappropriate or not based on a legitimate medical judgment. Plaintiff's concern about the aspirin prescriptions he received from Defendants Coe and Hardy, and the possible risk of developing an ulcer, is too speculative to rise to the level of deliberate indifference to a serious risk of harm. Finally, Defendant Coe appears to have evaluated Plaintiff promptly after he sought treatment from a nurse for his episode of irregular heartbeat (Doc. 12-1, pp. 23-24, 34). No deliberate indifference is evident from this incident.

Considering all of the allegations referencing Defendant Coe, the amended complaint fails to state a deliberate indifference claim upon which relief may be granted against him.

Turning to the remaining medical-provider Defendants, the only claim against Defendant Hardy is that she gave Plaintiff aspirin without regard to the possible risk of an ulcer. As noted above in reference to Defendant Coe, the complaint fails to state a cognizable claim on this matter.

Defendant Baker is mentioned only twice – once for the aforementioned visit on April 5, 2014, when she gave Plaintiff CTM and Acetaminophen for his cough, and again for giving him

---

[5] Plaintiff included with his original complaint a grievance dated October 8, 2014, in which he declared that he would start refusing all medications until he was given a special diet and proper treatment (Doc. 1-2, p. 28); this document was omitted from the exhibits Plaintiff submitted with the First Amended Complaint. Plaintiff also stated in the original complaint that he was not taking any medications for his abdominal distress as of the date of filing (Dec. 10, 2014). This information was also omitted from the First Amended Complaint.

expired medications on October 1, 2014. The first encounter indicates that Defendant Baker rendered reasonable and appropriate care for Plaintiff. As for the expired medications, nothing in the complaint suggests that Defendant Baker issued them intentionally, or that any harm befell Plaintiff (other than the expunged disciplinary report) as a result of taking them, if indeed he consumed any of the expired pills. This incident does not indicate that Defendant Baker was deliberately indifferent to Plaintiff's medical needs.

Defendant Martin, as noted above, did not run afoul of the Constitution even if he made "false statements" on Plaintiff's medical records. The other allegations against him are that he, in his role as Health Care Unit Administrator, confirmed the other doctors' diagnoses of Plaintiff's ailments, without conducting any separate diagnostic procedure (Doc 12, p. 8-9), and that he failed to investigate Plaintiff's complaint after he received the expired medications. Plaintiff himself notes that Defendant Martin was not directly involved in his medical treatment; instead, he is the supervisor of other medical staff. The Court has already concluded that the complaint fails to state a deliberate indifference claim against Plaintiff's front-line medical providers. Thus, there is no basis to hold Defendant Martin vicariously liable as their supervisor, when no violation of Plaintiff's constitutional rights occurred. *See also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) ("The doctrine of *respondeat superior* does not apply to § 1983 actions"); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (to be held liable, a supervisor must know about a subordinate's unconstitutional conduct and "facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see").

To summarize, **Count 1** fails to state a claim upon which relief may be granted against Defendants Martin, Hardy, Coe, Talbot, Butalid, or Baker.

**Dismissal of Count 2 – Defendant Walker**

Plaintiff's allegations supporting this claim are clear and succinct. Defendant Walker should have known that Plaintiff's job duties required a face mask; he had a face mask available for inmates who worked on the dryers; the failure to give Plaintiff a face mask led to his long-term cough and other injuries; and Defendant Walker put Plaintiff back on the same job without a face mask[6] after knowing what caused Plaintiff's cough (Doc. 12, p. 12).

These allegations may state a cognizable state law tort claim for negligence. *See Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)). Under Illinois law, in order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Id*. However, a showing of negligence, or even gross negligence, is insufficient to prove that an official acted with deliberate indifference. "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985); *see also Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). As the Supreme Court has explained, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an *excessive* risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

---

[6] Plaintiff stated in the original complaint that Defendant Talbot gave him a three-day permit to wear a face mask at work (a statement that does not appear in the First Amended Complaint). Neither pleading indicates which prison official had responsibility to provide the face mask to Plaintiff after the permit was issued, and neither shows that Defendant Walker knew about the permit.

he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 827 (1994) (emphasis added).

Plaintiff's only symptom at the time he worked in the laundry was a cough, albeit a persistent one. Whether or not Defendant Walker knew that Plaintiff had a short-term permit to wear a face mask, or knew that the exposure to dust and lint caused his cough, the facts do not suggest that Defendant Walker was aware that the coughing posed an excessive or substantial risk of serious harm to Plaintiff's health or safety. Allowing Plaintiff to work in the laundry without a protective mask, under these circumstances, does not rise to the level of unconstitutional deliberate indifference to a serious risk of harm. It may have been negligent, but in a civil rights claim brought under § 1983, a defendant can never be held liable for mere negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

**Count 2**, therefore, also fails to state a constitutional claim upon which relief may be granted. This claim, and the entire action, shall be dismissed. However, the dismissal of **Count 2** shall be without prejudice to Plaintiff pursuing a negligence claim in the Illinois courts, should he choose to do so. Nothing herein should be construed as an opinion on the merits of such a state law claim.

## Pending Motions

Because this action shall be dismissed, Plaintiff's motions for recruitment of counsel (Docs. 3 & 9) are **DENIED AS MOOT**.

## Disposition

**IT IS ORDERED** that this action is **DISMISSED** for failure to state a constitutional claim upon which relief may be granted. **COUNT 1** is **DISMISSED** with prejudice. **COUNT 2**

is **DISMISSED** without prejudice.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: September 29, 2015**

                                                                s/ STACI M. YANDLE
                                                                United States District Judge